IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **CRIMINAL NO. JKB-16-0485** |
| **JOCELYN BYRD** | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Together with 40 Co-Defendants, the Defendant was indicted on September 29, 2016 (ECF No. 1). She was arrested on October 5, 2016, and made her initial appearance in Court later that day (ECF No. 76). During that proceeding attorney Anton J. S. Keating, a member of this Court's Criminal Justice Act Felony Panel of Attorneys, was appointed to represent Ms. Byrd, and a formal Order to that effect was docketed on October 12, 2016 (ECF No. 139).

On or before October 7, 2016, but apparently after he was appointed in this case, Attorney Keating posted a message on his Facebook ™ page in which he showed a picture of Maryland's Eastern Correctional Institution, a state prison at the center of the allegations in this case and the institution where the Defendant was evidently employed as a correctional officer. Accompanying the picture of the prison were the following words: "back in the saddle again.....I need the action and the fee...." (Attachment No. 1). Attorney Keating acknowledges that he is the author and sponsor of this posting (Attachment No. 2).

The Sixth Amendment to the United States Constitution provides that

> In all criminal prosecutions, the accused shall enjoy the right ... to
> have the assistance of counsel for his defence.

In the Federal Courts, the "assistance" promised in the Sixth Amendment is delivered via implementation of the Criminal Justice Act (CJA), 18 U.S.C. § 3006A, and local court CJA "Plans." In the District of Maryland, following this Court's Plan, U.S. Magistrate Judges appoint either the Federal Public Defender or a member of the Court's Criminal Justice Act Felony Panel to represent each person charged with a serious offense who is otherwise unable to afford to hire a lawyer on their own. Recognizing that indigent defendants do not have the right to select the particular lawyer who will represent them, great care is taken to insure that each lawyer appointed is not merely licensed, but is also knowledgeable and experienced in federal criminal practice. The Court also takes pains to insure that the lawyers it appoints are consummate professionals, *i.e.*, attorneys who can be counted on to put their client's interests first and before their own. This primary commitment to the interests of one's client – this requisite professionalism – is rooted not just in modern principles[1] but also in the example set by our forebears at the bar (*See* David McCullough, *John Adams* 66-68 (2001).[2]

An attorney appointed to represent an indigent criminal defendant has many important responsibilities. One of those is to engage in conduct that will gain and keep the client's confidence – that will cause the client to believe that they are in good hands and that the lawyer appointed is knowledgeable, experienced, and devoted to achieving the best possible result for the client. Given the serious nature of the circumstances, it is highly inappropriate for a lawyer, in reference to a case and in a semi-public setting,[3] to imply, even jokingly, that he might be out

---

[1] *See* Maryland Rules of Professional Conduct, Appendix 19-B: Ideals of Professionalism ("An Attorney should aspire: (1) to put fidelity to clients before self interest; … (7) to preserve the dignity and the integrity of the profession by his or her conduct…)

[2] For over two decades the Federal Public Defender in this district has annually presented the "John Adams Award" to a member of this Court's Criminal Justice Act Panel who best exemplifies this commitment in his or her own practice. The award commemorates the founding father's selfless defense of the British soldiers accused of perpetrating the "Boston Massacre" in 1770.

[3] A hearing might have been appropriate to determine just how "private" or "public" was the communication via the Facebook™ post, but before the Court could consider the appropriate next steps, Mr. Keating sent an email to every

of practice, or that he is in need of some stimulation in his personal or professional life that he hopes the case will provide, or that he is involved in the case primarily for the fee it will generate. A client who has reason to believe that her attorney's motivations are primarily financial, or that the lawyer hasn't recently been involved in the sort of work necessary to prepare a successful defense in the present case, or that he just needs some "action," would have reason to doubt the attorney's commitment to her cause, not to mention his competence. The client would reasonably lack confidence in such a lawyer.

If the Defendant has the financial resources, she is of course free to retain any member of the bar to defend her. However, in this circumstance, where the Defendant lacks the resources to hire an attorney on her own, and the Court is required to act on her behalf, the Court's judgment is implicated in the choice of who is selected to serve. In light of the Facebook ™ posting, and considering subsequent communications that apparently emanated from Mr. Keating (see Attachment Nos. 3 and 4), the Court now lacks confidence in him. This case is at an extremely early stage and little if any prejudice will attach in relation to a change of counsel now.

Accordingly, the previous Order appointing Attorney Anton Keating (ECF No. 139) is VACATED and Mr. Keating shall no longer serve as the Defendant's attorney in this case. The Criminal Justice Act Coordinating Attorney for the District of Maryland is directed to immediately nominate a different member of the Court's Criminal Justice Act Felony Panel to represent the Defendant.[4]

---

one of his 100 or so colleagues on the CJA Panel, and to the Court through its CJA Coordinating Attorney (Attachment No. 3), widely publicizing his earlier post as well as expressing further observations and views the communication of which are of doubtful assistance to his client.

[4] In the earlier referenced email communication (*see* note 3 *supra*, referring to Attachment No. 3) Mr. Keating suggests that his personal First Amendment rights have been chilled, if not infringed, by the Court when it asked him whether the Facebook™ post was indeed his. The Court concludes that the greater interest here is the Sixth Amendment right of his client to be represented by a lawyer who is first and foremost devoted to her needs, with the lawyer's interest in free and unfiltered expression subordinated to this responsibility.

DATED this __31__ day of October, 2016.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
United States District Judge